UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH K. MURPHY-DAVIDSON,
an individual,

        Plaintiff,

v.                                                                                 Case No.: 14-cv-00779

KENNETH J. STOLL,                                              Hon. Ray Kent
an individual, and                                                 Magistrate Judge
COMFORCARE SENIOR SERVICES –
MID MICHIGAN, a limited liability company,

        Defendants.

---

## DEFENDANTS KENNETH J. STOLL AND COMFORCARE'S BRIEF IN SUPPORT OF MOTION FOR NEW TRIAL OR REMITTITUR OR JUDGMENT AS A MATTER OF LAW

A. Summary

Judges will go to great lengths to avoid disturbing a jury verdict. In such cases, the Court must find the verdict is against the great weight of the evidence, the amount awarded was excessive, or that no reasonable juror could come to the conclusion reached. This is one such case.

In the interest of judicial economy, it makes sense to defer judgment in an "intentional infliction of emotional distress" case until all the information is in. A jury nonsuit moots the question and avoids needless appellate review.

Ms. Davidson's claim of intentional infliction of emotional distress is inextricably interwoven and predicated upon the assault and stalking counts, exclusively. To be sure, count III of Ms. Davidson's complaint does not cite any additional facts beyond those cited in the assault and stalking counts to support her claim of intentional infliction of emotional distress.

In considering whether Ms. Davidson met the high standard of "extreme and outrageous" conduct, the defendants' respectfully submit that the Court should also respect and give deference to the jury's conclusion that Mr. Stoll did not engage in any stalking behavior, and at best committed a technical assault that was not the proximate cause of Ms. Davidson's alleged injuries.[1] Under these

---

[1] Exhibit A.

circumstances, a new trial or judgment as a matter of law is appropriate.

The record is also devoid of any evidence that Mr. Stoll intended to inflict, or that Ms. Davidson suffered, severe emotional distress as the result of Mr. Stoll's conduct. The jury likewise concluded that Ms. Davidson did not suffer any economic damages as the result of the alleged intentional infliction of emotional distress. Moreover, considering comparative verdicts for compensatory and non-economic damages, the jury's verdict was clearly excessive.

B. Facts

Plaintiff alleges that Mr. Stoll assaulted and battered her, stalked her and committed intentional infliction of emotional distress. Following a six-day jury trial, the jurors ruled in favor of defendants on the assault and stalking counts, while awarding $130,000 for the intentional infliction of emotional distress.[2] A corresponding judgment was entered on 2 May 2016.[3]

During the trial, at the close of plaintiff's proofs, defense counsel moved for a judgment in favor of Mr. Stoll and Comforcare regarding the stalking and intentional infliction counts, for the reasons stated on the record and "for the reasons more fully set forth in our trial brief."[4] Regarding the intentional infliction count, the Court ruled that the plaintiff could submit alternative theories to the jury, while not specifically addressing whether there was any evidence of "extreme and

---

(1. Did Mr. Stoll assault and batter Ms. Davidson? Answer: YES.
(1.a. If yes, was the assault and battery the proximate cause of damages to Ms. Davidson? Answer: **NO**.
(4. If you find that Ms. Davidson suffered economic damages, what is the total amount of such damages suffered to date? Answer: **$ 0.00**.

[2] EXHIBIT A
[3] EXHIBIT B
[4] Defendant's Trial Brief, at page 10, reads in pertinent part as follows:

"In Count III of her complaint, Ms. Davidson alleges that Mr. Stoll's conduct in stalking her also constitutes an intentional infliction of emotional distress.( See Complaint, ¶¶ 38-41. It is unclear if she also claims that the alleged battery also contributes to this finding.)

Ms. Davidson asserts no facts beyond Mr. Stoll's alleged stalking or one instance of alleged battery to support this allegation. In essence, it's a mere restatement of plaintiff's civil stalking and assault complaint. This allegation will also be subject to Mr. Stoll's summary judgment motion under Rule 50.

To sustain a cause of action for intentional infliction of emotional distress, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *(Sawabini v. Desenberg,* 143 Mich App 373, 383; 372 NW2d 560 (1985). "It is initially for the trial judge to decide whether defendant's conduct might reasonably be regarded as so extreme and outrageous to allow recovery for intentional infliction of emotional distress." ( *Id*, at 383) At the conclusion of plaintiff's proofs, the Court will have little difficulty finding that Ms. Davidson's has failed to meet her burden of proof regarding Mr. Stoll's alleged stalking. Since the intentional infliction of emotional distress is premised upon a finding of stalking, ([t]here no authority to suggest that one alleged battery or assault and battery may also constitute an intentional infliction of emotional distress) this count of plaintiff's complaint must also fail."

2

outrageous" conduct on the part of Mr. Stoll.[5]

Defendants now move for a new trial or remittitur under F.R.Civ.P. 59 or judgment as a matter of law in their favor under F. R. Civ. P. 50(b).

C. <u>Standards for Granting Motions</u>

Under Rule 59(a)(1)(A), after a jury trial a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." This has been interpreted to require a new trial only when (1) the verdict is against the great weight of evidence; (2) the damages being excessive, or (3) the trial being unfair to the moving party in some fashion, e.g., the proceedings being influenced by sympathy, prejudice or bias.[6]

Instead of granting a new trial, the Court may alternatively grant a remittitur of the amount of damages awarded by the jury. A court should grant such a motion only if "the award clearly exceeds the amount which, under the evidence in the case, was the maximum that a jury could reasonably find to be compensatory for the plaintiff's loss."[7] Other factors include: 1) whether the verdict "shocks the judicial conscience"; 2) whether the verdict was the result of improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact; 3) whether the verdict was within the limits of what reasonable minds would deem just compensation for the injury sustained; 4) whether the amount actually awarded is comparable to awards in similar cases within the state and in other jurisdictions.[8]

Under Rule 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."[9] When a party challenges the sufficiency of the evidence in a diversity case, the trial courts applies the forum state law standard. Under Michigan law, a motion for a directed verdict – the same thing as under a judgment as a matter of law under rule 50 – should be granted when the evidence, viewed in a light most favorable to the non-moving party, fails to establish a claim as a matter of law.[10] Judgment as a matter of law is appropriate when the evidence

---

[5] Counsel is relying on his memory and notes from trial. No transcript is available at the time of filing this motion.
[6] *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996)
[7] *Bickel v. Korean Air Lines Co, Ltd.*, 96 F3d 151, 156 (6th Cir. 1996).
[8] *Meyers v. Wal-Mart*, 77 F.Supp 2d 826 (E.D. Mich. 1999), citing *Palenkas v. Beaumont Hosp.*, 432 Mich 527, 443 N.W.2d 354 (1989) and 22 Am. Jur. 2d, Damages, §§ 1021-1025, pp. 1067-1075.
[9] Fed. R. Civ. P. 50(a), *Weisgram v. Marley Co.*, 528 U.S. 440, 120 S Ct. 1011, 145 Led. 2d 958 (2000).
[10] *Orzel v Scott Drug Co*, 449 Mich 550, 557 (1995); *Shivers v. Schiege*, 285 Mich App 636, 639 (2000).

shows "there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party."[11]

> D. No reasonable juror could find that Mr. Stoll's actions meet the standard of "extreme and outrageous" conduct necessary to establish a claim for emotional distress – such a finding is against the great weight of evidence.

The Michigan Supreme Court has never formally recognized the tort of intentional infliction of emotional distress ("IIED").[12] Assuming that the cause is valid, recovering for the tort requires a plaintiff to prove the following elements: "(1) 'extreme and outrageous' conduct, (2) intent or recklessness, (3) causation, and (4) 'severe emotional distress."[13] Whether the offending conduct is extreme and outrageous is initially a question of law for the court.[14]

The threshold for showing extreme and outrageous conduct is high. No cause of action will necessarily lie even where a defendant acts with tortious or even criminal intent.[15] Rather, liability is imposed only where "'the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[16]

In *Roberts v Auto-Owners Insurance Co,* without reaching the issue of whether recognizes the tort of intentional infliction of emotional distress, the Court cited the Restatement definition of "extreme and outrageous," in pertinent part, as follows:

> "The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go

---

[11] *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004).

[12] See *Smith v Calvary Christian Church,* 662 Mich 679, 690; 614 NW2d 590 (2000) (Weaver, J., concurring), citing *Roberts v Auto-Owners Ins Co,* 422 Mich 594; 374 NW2d 905 (1985). Essentially, plaintiff is asking a federal court to predicate an award of damages on a cause of action that has never been recognized by Michigan's highest court -- and this cause of action has been asserted for the past half century.

[13] *Roberts, supra* at 602, quoting Restatement Torts, 2d, § 46, p 71.
[14] *Sawabini v Desenberg*, 143 Mich App 373, 383; 372 NW2d 559 (1985), citing *Roberts*.

[15] *Roberts, supra* at 602, citing Restatement, pp 72-73.
[16] *Roberts, supra* at 603, quoting Restatement, pp 72-73.

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"[17]

In *Roberts*, Michigan's highest court also cited the following Restatement which "further qualifies the conduct proscribed by this tort:

> 'The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is aware that such insistence is certain to cause emotional distress."[18]

Finally, again citing the Restatement commentary, the Robert's Court held that "[t]he rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. . . . [t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it."[19]

In the present case, the evidence adduced at trial indicates that Mr. Stoll's conduct was neither extreme nor outrageous. There is no evidence which show that, in approaching defendant in the home of a client, it was Mr. Stoll's intent to cause plaintiff the "extreme emotional distress" which the legal standard has in view. Instead, the uncontroverted evidence at trial was that he did not expect to find her there. Upon her discovery in the home, Mr. Stoll was attempting to give Ms. Davidson paperwork regarding her alleged breach of her employment contract. In fact, at one point during Mr. Stoll's visit, he went back out to his car to retrieve a copy of the Client Services Agreement[20] and Employee Handbook Release Form[21] containing the non-compete agreement that Mr. Stoll had every reason to believe were valid.

Here, the jury could have chosen to credit Ms. Davidson, who relates that Mr. Stoll banged on the bedroom door; opened it with force, and that the parties engaged in a tussle over the box of medical gloves. Shortly after the incident, Ms. Davidson admitted that she told Trooper Umphrey that they were "fighting over the box of gloves like little kids."[22] A patty cake fight over medical

---

[17] *Id.*
[18] *Id,* 422 Mich at 608, Quoting Restatement of Torts, 2d, Sec. 46, comment g. p. 76.
[19] *Id*, 422 Mich at 608, 609, quoting Restatement of Torts, 2d, Sec 46, comment j. p. 77.
[20] EXHIBIT C (TRIAL EXHIBIT J)
[21] EXHIBIT D (TRIAL EXHIBIT B)
[22] Ms. Davidson admitted at trial that she knocked the box of gloves from Mr. Stoll's hands and ripped the 8/5 Comforcare Weekly Flow Sheet; Defendant's Trial Exhibit F.

gloves which results in no injury is the kind of "triviality" Dean Prosser has in mind when he writes that "[l]iability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[23] This is simply not the "outrageous" or "extreme" conduct the law has in view.[24] Therefore Davidson's testimony has no tendency to support a verdict of IIED.[25]

What else on this record might be considered in support to the verdict? The jury could have found that Ms. Davidson further suffered the contemporaneous indignity of Mr. Stoll yelling at her in vulgar language while intoxicated; but people use vulgar language towards each other, every day. This testimony describes an incident of deplorable manners, but falls far short of conduct so "outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[26]

If Ms. Davidson's version of this event constitutes an intentional infliction of emotional distress, it would invite an avalanche of cases. Every other family disturbance call, for example, numbering in the tens of thousands; every incident of drunken rudeness at the Calder Plaza festival beer tent by a visitor from South Bend would create a cause of action for federal court.

Mr. Stoll's confrontation with then 88-year-old Mr. Kring, while ill-advised, also does not rise to the level of intentional infliction of emotional distress. Ms. Davidson claims she was privy to this conversation while hiding from Mr. Stoll in the rear bedroom. This evidence, along with Mr. Stoll's decision to subsequently charge Mr. Kring's credit card $5,000, was elicited by plaintiff solely to inflame the passions of the jury. Counsel's animated sermon to the jury notwithstanding,

---

[23] *Roberts, supra*, 422 Mich at 603.
[24] The United States Sixth Circuit has affirmed the dismissal of IIED claims in cases presenting allegations that are much more severe than Ms. Davidson presented at trial. In *Snyder v. Kohls Dept Store* (EXHIBIT F), for example, plaintiff was falsely accused of shoplifting, was detained for thirty or forty minutes and was subjected to a strip search in front of a police officer. The Court held that "Snyder's embarrassment and discomfort do not rise to the level of severe emotional distress required to submit her claim to the jury." (Citations omitted) In *Polk v. Yellow Frieight*, 801 F.2d 190 (1986) a Sixth Circuit panel found that plaintiff's allegations that a male supervisor "subjected the female staff to unwanted touching, sexual suggestions and homosexual advances, thus creating an intimidating and hostile work environment" was not a viable cause of action where plaintiff failed to demonstrate that she suffered "actual emotional distress of a significant magnitude." 801 F2d 190, 196.
[25] A viable example of conduct which is sufficiently outrageous to be actionable under the Restatement, see *Pratt v. Brown Machine Co.*, 855 F.2d 1225, 1238-42 (6th Cir.1988) (IIED under Michigan adoption of the Restatement for employer to coerce employee into silence in the face of 18 months of harassing phone calls, some threatening rape, put to the employee's wife by an upper level manager of the employer).

[26] *Sawabini, supra.*

Ms. Davidson cannot predicate a claim of intentional infliction of emotional distress on Mr. Stoll's offensive interaction with a non-family member. The law simply will not support it and the incident therefore has no bearing on the analysis whether this trial record supports a verdict of intentional infliction of emotional distress.

According to her own testimony, Plaintiff Davidson believed Mr. Stoll's motivation for "stalking" her (a characterization I put in quotation marks because we now know in light of the jury's verdict, was not "stalking" at all) before the August 5 incident was that she was a valuable employee and because he wanted her to accept further assignments. Any emotional distress plaintiff may have felt was the product of her attempting to conceal that she was working for the Krings in violation of her non-compete agreement.[27] In any event, this testimony supports a finding of annoyance, but not of the kind of emotional distress a woman might feel in a stalking situation where her personal safety is put at risk.

Neither does Mr. Stoll's 10 June 2013 visit to Ms. Davidson's residence, 25 days before the 5 August incident, constitute "extreme" or "outrageous" conduct. The record supports a finding and a belief on plaintiff's part that Mr. Stoll came to her residence because she had not returned his text messages; that she was not present, but learned of Mr. Stoll's visit from her then boyfriend.[28] Did Mr. Stoll leave a dead cat on her doorstep? No. Mr. Stoll left a business card with a note on the back that said: "Call me." This conduct was neither outrageous, nor extreme, nor did it precipitate distress. Even if the Court were to treat this unwanted visit as a trespass, this would do nothing to advance a claim of intentional infliction of emotional distress.[29]

Accepting Ms. Davidson's version of the events leaves no room to dispute the fact that Mr. Stoll's conduct was motivated by a desire to apprise the parties of the non-compete agreements in the context of an employer-employee relationship. This was a lawful motivation, and it follows that no reasonable juror could find Mr. Stoll's actions were intended to cause Ms. Davidson severe emotional distress for its own sake. Mr. Stoll's ill-mannered conduct in the prosecution of that lawful motivation, which was not inherently so atrocious or extreme as to exceed the bounds of

---

[27] Plaintiff cannot claim emotional distress that is largely "self-inflicted." *Polk v. Yellow Frieght Systems*, 801 F.2d 190, 196-197 (1986).
[28] EXHIBIT E. (Trial Exhibit L) "[h]e came to my house because I never returned his calls or text." Ms. Davidson's Petition for a PPO, dated -08-07-13.
[29] *Roberts, supra.*

decency, is not actionable as intentional infliction of emotional distress.[30] Therefore, the verdict should be vacated for lack of evidentiary support in the trial record.

> E. Viewing the evidence in a light most favorable to Ms. Davidson, she has failed to prove, or even alleged, that Mr. Stoll's conduct caused her extreme emotional distress.

In an intentional infliction case, "[t]he law intervenes only where the distress inflicted is so severe than no reasonable man could be expected to endure it." The intensity and duration of the duress are factors to be considered in determining its severity."[31] Therefore, even if the court were to find Mr. Stoll's conduct "outrageous", notwithstanding the foregoing considerations, it would still be hard pressed to leave the verdict undisturbed here, where plaintiff Davidson failed to prove or even allege that she suffered <u>extreme</u> emotional distress, another element of the tort of intentional infliction of emotional distress.[32]

Aside from the onset of physical and corresponding psychological challenges plaintiff experienced after she moved to Florida, the record is devoid of any evidence that she sought psychological counseling or otherwise suffered any extreme emotional distress from her short tenure of employment a year before. While she testified that Mr. Stoll's "stalking" behavior was one of many reasons she left Michigan, we know, from the jury's nonsuit verdict on the stalking claim, that whatever defendant did, his conduct did not involve a "willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested," because that is the definition of "stalking" as to which this jury exonerated the defendants.[33] Therefore, even viewing this testimony of "stalking" in a light favorable to plaintiff, it is hard to see how whatever

---

[30] *Id*, 422 Mich at 608, Quoting Restatement of Torts, 2d, Sec. 46, comment g. p. 76.
[31] *Haverbush v. Powelson*, 217 Mich App 228, 551 NW2d 207 (1996). (Concluding there was a question of fact concerning defendant's actions, which included a two-year period of intense stalking, repeatedly threatening the plaintiff and his fiancé with violence, leaving lingerie, an ax and hatchet on the finance and plaintiff's car, accusing him of being a philanderer in a letter to his parents and threatening to defame plaintiff with his physician colleagues.)

[32] "Count III – Intentional Infliction of Emotional Distress
38. Paragraphs 1 through 37 are hereby incorporated by reference.
39. Defendant Stoll's conduct as described above was extreme and outrageous, utterly beyond all possible bounds of decency, and intolerable in a civilized society.
40. Defendant Stoll's conduct was intentional and reckless.
41. As a direct and proximate result of Mr. Stoll's conduct, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation, embarrassment, and physical injury."

---

[33] See MCL 750.411h(1)(d)

she experienced short of actual "stalking" as defined by law could have precipitated "extreme emotional distress" where the law rules out any feeling of "terror, fright, intimidation, threat, harassment, or molestation" et al. [34] Where there was no "stalking" on this record, whence the finding of emotional distress?

While Ms. Davidson testified to the onset of many challenges to daily living <u>after</u> her 15 May 2015 surgery, again, the jury concluded that Mr. Stoll's actions were not the proximate cause of Ms. Davidson's physical injuries.[35] Viewing the evidence in a light most favorable to Ms. Davidson, there was scant evidence adduced at trial to support a finding that she experienced any emotional distress because of Mr. Stoll's alleged conduct, leave alone severe emotional distress. The short duration of any alleged emotional upset suffered by plaintiff is a factor that militates against a finding of severe emotional distress.[36]

Given insufficient evidence to support the verdict in favor of Ms. Davidson for Mr. Stoll's intentional infliction of emotional distress, the Court should be left to conclude that the verdict was influenced by passion or sympathy for Ms. Davidson or to punish Mr. Stoll in his dealings with the Krings.

F. <u>Remittitur of the $130,000 for non-economic damages is appropriate</u>.

The jury awarded plaintiff the sum of $130,000 for non-economic damages for the alleged intentional infliction of emotional distress. The Court should find that this sum is beyond the amount a jury could reasonably find to be compensatory for the plaintiff's loss and beyond the limits of what reasonable minds would deem just compensation for the injury sustained."[37] The Court may also find that the amount awarded was based upon sympathy and is not comparable to awards in similar cases within the state and in other jurisdictions.[38]

Ms. Davidson claims no economic damages, medical bills or wage loss for her alleged emotional distress. Any claimed economic damages were the claimed result of the physical assault. Again, the jury specifically found that the defendants were not responsible for any economic damages from the alleged assault.

---

[34] *Roberts, supra.*
[35] Jury verdict form, EXHIBIT A.
[36] *Haverbush, supra.,* 217 Mich App at 235.
[37] *Bickel v. Korean Air Lines Co, Ltd.,* 96 F3d 151, 156 (6th Cir. 1996).
[38] *Meyers v. Wal-Mart,* 77 F.Supp 2d 826 (E.D. Mich. 1999), citing *Palenkas v. Beaumont Hosp.*, 432 Mich 527, 443 N.W.2d 354 (1989) and 22 Am. Jur. 2d, Damages, §§ 1021-1025, pp. 1067-1075.

Determining whether $130,000 is reasonable compared to similar awards for intentional infliction of emotional distress is difficult. The undersigned found few, if any, reported decisions for an award of intentional infliction of emotional distress that was not combined with breach of contract, stalking, assault, defamation, or another intentional tort.[39]

All of the reported cases involved clear incidents of extreme misconduct which far exceeded anything on this record, and verdicts that spoke for themselves in justification of the respective verdicts.

WHERFORE, defendants move the Court to enter judgment in their favor on the intentional infliction of emotional distress claim, for lack of record support; or in the alternative, to remit the award of $130,000.

Respectfully submitted,

/s/ Thomas A. Ginster

Thomas A. Ginster (P-40243)
Attorney for Defendants
203 S. Lafayette St., PO Box 106
Greenville, MI 48838
(616) 754-5303
e-mail: ginster@lawyer.com

---

[39] In *Haverbush, supra*, the trial court without a jury awarded plaintiff injunctive relief and $11,615 in attorney fees.[39] In *Lebetter v. Brown City Savings Bank*,[39] the Michigan Court of Appeals sustained a jury verdict for $50,000 on an intentional infliction count.[39] In *Persell v Wertz*[39], a jury awarded the plaintiff $15,000. In *Jacobson v Parda Federal Credit Union*, a jury awarded plaintiff $100,000 in noneconomic damages for intentional infliction of emotional distress. Footnote 3, 457 Mich 318, 577 NW2d 881 (1998). (The trial court vacated the verdict and the court of appeals affirmed.)

In *Polk v. Yellow Frieght, supra*, 801 F.2d 190, 193 (1986), a jury from the Eastern District of Michigan awarded the plaintiff $75,000 for an allegedly racial charged hostile work environment, coupled with "unwanted touching, sexual suggestions and homosexual advances" an award the 6th Circuit later vacated.