# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH K. MURPHY-DAVIDSON,

    Plaintiff,

v.

KENNETH J. STOLL and
COMFORCARE SENIOR SERVICES-
MID MICHIGAN,

    Defendants.

Case No. 1:14-cv-779

Hon. Ray Kent

## VERDICT FORM

1. Did Mr. Stoll assault and batter Ms. Davidson?

    Answer: __YES__ (yes or no)

   a. If yes, was the assault and battery the proximate cause of damages to Ms. Davidson?

    Answer: __NO__ (yes or no)

   b. If yes, was Mr. Stoll acting within the scope and course of his employment with ComForcare at the time of the assault and battery?

    Answer: __YES__ (yes or no)

2. Did Mr. Stoll stalk Ms. Davidson?

    Answer: __NO__ (yes or no)

   a. If yes, was the stalking the proximate cause of damages to Ms. Davidson?

        Answer: _NO_ (yes or no)

   b. If yes, was Mr. Stoll acting within the course and scope of his employment with ComForcare at the time of the stalking:

        Answer: _NO_ (yes or no)

3. Did Mr. Stoll intentionally inflict emotional distress on Ms. Davidson?

        Answer _YES_ (yes or no)

   a. If yes, did Mr. Stoll's conduct proximately cause damage to Ms. Davidson?

        Answer: _YES_ (yes or no)

   b. If yes, was Mr. Stoll acting within course and scope of his employment with ComForcare when he intentionally inflicted emotional distress on Ms. Davidson?

        Answer: _YES_ (yes or no)

4. If you find that Ms. Davidson suffered economic damages, what is the total amount of such damages suffered to date?

        Answer: $ _0.00_

5. If you find that Ms. Davidson will suffer economic damages in the future, what is the total amount of such damages?

        Answer: $ _0.00_

6. If you find that Ms. Davidson suffered non-economic damages, what is the total amount of such damages to date?

        Answer: $ _130,000_

7. If you find that Ms. Davidson will suffer non-economic damages in the future,

what is the total amount of such damages?

Answer: $ 0.00

8. If you find that Mr. Stoll stalked Ms. Davidson, is she entitled to exemplary damages?

Answer: NO (yes or no)

a. If yes, what is the amount of exemplary damages to which she is entitled?

Answer: $ 0.00

Dated: 5-2-16

Jury Foreperson

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH K. MURPHY-DAVIDSON,

      Plaintiff,

v.

KENNETH J. STOLL, et al,

      Defendants.
_____/

Case No. 1:14-cv-779

Hon. Ray Kent

**JUDGMENT**

This action was tried by a jury with Judge Ray Kent presiding, and the jury has rendered a verdict.

**IT IS ORDERED AND ADJUDGED:**

1. That plaintiff takes nothing on Count I (Assault and Battery).

2. That plaintiff takes nothing on Count II (Civil Stalking).

3. That plaintiff is entitled to judgment on Count III (Intentional Infliction of Emotional Distress) against both defendant Kenneth J. Stoll and ComForcare Senior Services-Mid Michigan in the amount of $130,000.

Dated: May 2, 2016

/s/ Ray Kent
RAY KENT
United States Magistrate Judge

# EXHIBIT C

# Home Services Agreement

CLIENT NAME: _Imelda & Don Kring_

### Consent to Care

I have asked ComForcare Senior Services (hereinafter "Agency") and its employees to take care of me at my residence. **I understand that any discussions with Agency employees regarding this Agreement or the development of my Care Plan are not intended to diagnose or treat me for any health condition.** Agency and its employees will follow any instructions for my care given by my physicians and/or nurses responsible for my care plan. I consent to Agency's care of me. I also acknowledge that I have not been convicted of any criminal offense in any court of competent jurisdiction.

### Health Records

I permit Agency and its employees to release information contained in my records, including any information concerning: HIV, AIDS, ARC (AIDS - related complex), substance abuse treatment or diagnosis, and social/psychological services. Said information may only be released to any third party payer, insurance agency (or their agents responsible for paying my expenses), any relevant health care facility/professional, and/or any appropriate federal or state agency for any purpose the Agency determines to be necessary in the delivery of high-quality care.

### Insurance/Liability

I will not allow any Agency employee to drive any of my vehicles without filing a waiver slip in advance with Agency. I understand that Agency's insurance does not cover damage to my car or me while Agency's employees drive my vehicle. I accept full responsibility for such damage. **I agree to carry a standard homeowner's insurance policy or similar tenant's policy on the client's residence. Agency limits its liability for property loss or damage to claims filed within thirty (30) days of occurrence. All losses require a police report. To prevent any potential losses, I agree to remove all items of concern or store them in a safe place. Money or gifts may not be given directly to any Agency employee.**

### Agency Employees

I understand that Agency personnel are employees of Agency. All scheduling must go through Agency's office and that I must request any changes to established schedules from Agency's office. I understand that active Agency employees are not allowed to make private employment arrangements with me or my family within 180 days of the discontinuation of services unless I receive written authorization from the Agency Director, Manager, or Administrator. I also understand that employees who have quit or been terminated by Agency are not allowed to make private employment arrangements with me or my family within 180 days of their termination of employment unless I receive written authorization from the Agency Director, Manager, or Administrator. I understand that by doing so violates this Agreement and that I will be liable to Agency for the financial damage caused. Said financial damage will be the greater of the average gross revenue of the highest three billing periods within the last three months of service, or $5,000.00, plus all related attorney/court costs Agency incurs in enforcing this Agreement. I promise to pay this amount upon Agency's demand. Agency further reserves the right to discontinue my care if I violate this Agreement, and to apply my deposit to satisfy any unpaid balance.

Client
Client Representative
Initials

### Stopping Service

If I want to stop Agency's services, I must give at least 24 hours advance notice to the office. I understand that if I fail to give sufficient notice or request during a shift to end my services (excepting situations in which Agency verifies employee incompetence or unsatisfactory duty), I may be required to pay the full shift charge and Agency may assess and collect for this shift charge without my signature on the time or flow sheets. Agency reserves the right to discharge my care according to my state's discharge policy or with 24 hours notice, whichever is the greater. Furthermore, I understand that Agency can stop its service without notice if Agency's management determines that services related to my care pose a significant risk to Agency or any of its employees or agents. **If services are ordered by phone, facsimile, or electronic mail or otherwise supplied prior to the date of this Agreement, the terms of this Agreement shall apply to all services rendered, including any services rendered prior to the execution of this Agreement.**

_Donald E. King_
Client/Client Representative Signature

ComForcare Health Care Holdings, Inc (May 2011)

Page 1 of 4

# EXHIBIT D



# Employee Handbook Release Form

This certifies that I have received the employee handbook from ComForcare Senior Services on __4-26__, 20__13__ I agree to abide by all agency rules and regulations herein, and to uphold the integrity of ComForcare at all times. The handbook includes a position description, which has been explained to me and I fully understand all of my responsibilities as described in the handbook. I understand that my employment relationship with ComForcare is an At-Will arrangement and either ComForcare or I have the right to terminate the employment relationship at any time, with or without cause and with or without notice.

Should any questions arise throughout my employment regarding job responsibilities and/or duties, I will contact the ComForcare office immediately for clarification. I also understand that if I choose to terminate my employment, I must return my identification badge, handbook, and any other relevant paperwork or equipment belonging to ComForcare before receiving my final paycheck.

I understand that ComForcare does not tolerate any act of intimidation or sexual harassment from any employee. The laws that prohibit such sexual harassment in the workplace generally define it as including unwelcome sexual advances, requests for sexual behavior and other verbal or physical conduct of a sexual or abusive nature that affects an employee's job status or work environment. Violation of such policies may result in immediate termination of employment.

I understand that ComForcare does not allow the carrying of concealed weapons of any kind, by any employee, during working hours. Violation of such policies may result in immediate termination of employment

Furthermore, I understand that I am not permitted to make any private employment arrangements with ComForcare's clients or their families. I understand that any such arrangement is grounds for immediate termination and may result in my being liable to ComForcare for any damages and/or costs ComForcare suffers as a result of such an arrangement. These costs may be in excess of $5,000.00.

_____      __4-26-13__
Employee Signature                    Date

_____      __4/26/13__
Administrative Witness                Date

# EXHIBIT E

Approved, SCAO

Original code
1st copy - Judge/Assignment clerk (green)
2nd copy - Respondent (blue)
3rd copy - Petitioner (pink)
4th copy - Return (yellow)

| STATE OF MICHIGAN 8th Montcalm JUDICIAL CIRCUIT COUNTY | PETITION FOR PERSONAL PROTECTION ORDER (NONDOMESTIC) | CASE NO. 13-K-17737-PH |
|---|---|---|

Court address: 639 N. State St. Stanton, MI 48888
Court telephone no.: (989) 831-3520

**A** Petitioner name: Deborah R Murphy-Davidson  Age: 47
Address and telephone no. where court can reach petitioner: 208 Clark St, Lakeview, MI 48850

v

Respondent name, address, and telephone no.: Ken Stoll, 312 E. Main St, Stanton MI  989 831-5000  Age: ___

1. The petitioner and respondent have never been husband and wife, resided in the same household together, had a child in common, or had a dating relationship with one another.

**B** 2. ☐ The respondent is required to carry a firearm in the course of his/her employment. ☒ Unknown.

**C** 3. a. There ☐ are ☒ are not other pending actions in this or any other court regarding the parties.

| Case number | Name of court and county | Name of judge |
|---|---|---|
| | | |

b. There ☐ are ☒ are not orders/judgments entered by this or any other court regarding the parties.

| Case number | Name of court and county | Name of judge |
|---|---|---|
| | | |

**D** 4. I need a personal protection order because: Explain what has happened (attach additional sheets).

Ken Stoll is a former Boss of mine - he has harassed me by Phone & text when I quit his company - I have never had any kind of relationship with him up until the assault. I had only met with him 2 times sometime after I quit. He came to my house because I never returned his calls or text - He walked into my Home without any permission -

**E** 5. I make this petition under the authority of MCL 600.2950a(1) and ask the court to grant a personal protection order prohibiting the respondent from

on 8-5-13 Ken Stoll came to Don & Imelda Krings Home and physically assaulted me injuring me - I have a concussion & contusions.

☒ a. stalking me as defined by MCL 750.411h and MCL 750.411i, which includes but is not limited to
☒ following me or appearing within my sight.
☒ appearing at my workplace or residence.
☒ approaching or confronting me in a public place or on private property.
☒ entering onto or remaining on property owned, leased, or occupied by me.
☒ sending mail or other communications to me.
☒ contacting me by telephone.
☒ placing an object on or delivering an object to property owned, leased, or occupied by me.
☒ threatening to kill or physically injure me.
☒ purchasing or possessing a firearm.
☒ other: _____

☒ b. posting a message through the use of any medium of communication, including the Internet or a computer or any electronic medium, pursuant to MCL 750.411s.

**F** ☒ 6. I request an ex parte order because immediate and irreparable injury, loss, or damage will occur between now and a hearing or because notice itself will cause irreparable injury, loss, or damage before the order can be entered.

**G** ☐ 7. I have a next friend petitioning for me. I certify that the next friend is not disqualified by statute and is an adult.

**H** Date: 4-7-13

Petitioner's signature

CC 377 (3/11) PETITION FOR PERSONAL PROTECTION ORDER (NONDOMESTIC)   MCL 600.2950a, MCR 3.703

# EXHIBIT F

BRIDGETTE SNYDER, Plaintiff-Appellant,

v.

KOHL'S DEPARTMENT STORES, INC., Defendant-Appellee.

No. 14-5157

United States Court of Appeals, Sixth Circuit

October 10, 2014

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

BEFORE: GUY and CLAY, Circuit Judges. [*]

CLAY, Circuit Judge.

Plaintiff Bridgette Snyder appeals from the district court's grant of summary judgment to Defendant Kohl's Department Stores, Inc. ("Kohl's") on her claims for false imprisonment and intentional infliction of emotional distress. For the reasons that follow, we AFFIRM the district court's grant of summary judgment on Plaintiff's claim for intentional infliction of emotional distress, but REVERSE and REMAND her false imprisonment claim for proceedings consistent with this opinion.

BACKGROUND

Plaintiff was detained by Defendant's personnel for suspected shoplifting at a Georgetown, Kentucky store on the evening of March 1, 2012, but, after a thirty or forty minute detention and a strip search conducted by a Kohl's employee at the direction of a police officer, she was ultimately found not to have taken anything. Following the incident, she brought suit against Kohl's, the police officer, and the City of Georgetown.[&dagger;] She separately settled her claims against the police officer and the City of Georgetown. Although the settlement eliminated the federal claims from the case, the district court proceeded to resolve Kohl's outstanding summary judgment motion on Plaintiff's state law claims of false imprisonment and intentional infliction of emotional distress. The district court's jurisdiction was proper under 28 U.S.C. § 1367.

The district court granted summary judgment to Defendant on the false imprisonment claim after concluding that the undisputed facts established that Defendant met the requirements of the "shopkeeper's privilege, " an affirmative defense set out at Ky. Rev. Stat. Ann. § 433.236 (West 2014).

The district court held that the undisputed facts established that Defendant had probable cause for detaining Plaintiff, and that the detention was reasonable in length and manner. The district court listed these purportedly undisputed facts as supporting probable cause:

• Kohl's Loss Prevention Supervisor Michael Pittman ("Pittman") observed Snyder in a high-theft area of the store moving rapidly and picking up items without regard to size or price.

• Based on his initial observations and concerns, Pittman requested that Kohl's Loss Prevention Officer Michael Tam Lung ("Tam Lung") focus the store's closed circuit cameras on Snyder.

• During their observations, Pittman and Tam Lung observed other suspicious behavior by another patron consistent with being a look-out for Snyder or an accomplice.

• Pittman and Tam Lung observed Snyder enter a fitting room with a number of items of clothing. And while Pittman did not enter the fitting room with the plaintiff, he noted the specific fitting room that was used.

• While Snyder was inside the fitting room, Pittman overheard popping sounds which were consistent with security tags being removed from merchandise.

• Pittman and Tam Lung observed Snyder exit the fitting room with no merchandise in her hands. After exiting, Snyder walked fast toward the store's exit.

• Pittman quickly checked the stall that Snyder had used but did not find any of the merchandise that had been taken into the fitting room.

(R. 51, Mem. Op. and Order, Page ID# 951-52.) Additionally, the court noted that after Plaintiff's detention and eventual departure, "Pittman discovered several items of merchandise several stalls from the one Snyder had used" and that "[a]ccording to the defendant, the security tag had been ripped off one pair of jean shorts, damaging the shorts." (Id. at Page ID# 952.) The district court acknowledged that "this additional information is not relevant to whether Kohl's had probable cause to detain Snyder under the statute, " but nonetheless remarked that "it is consistent with the observations of Kohl's employees" that it had previously cited as evidence of probable cause.

(*Id.*)

The district court did not specifically identify its reasons for concluding that Plaintiffs detention was reasonable in time and manner, but it did state that she "offered to remove items of clothing in an effort to convince Kohl's employees that she had not stolen merchandise" and that her participation in the strip search constituted "voluntary conduct." (*Id.* at Page ID# 952-53.)

Not all of these facts are undisputed. Plaintiff testified in her deposition that she left all of the clothes that she tried on in the fitting room where she tried them on. She testified that she did not know that any of the tags were removed. Plaintiff testified that she did not seek to remove her sweatshirt in order to demonstrate that she did not have anything on her, but rather because she was getting hot. Additionally, Plaintiff testified that she "complied" with the officer's direction that she submit to a strip search because "he's a police officer." (R. 35-3, Snyder's Dep. Testimony. at Page ID# 788.)

Some additional facts not highlighted by the district court are also relevant to this appeal. First, Plaintiff described her selection of clothes to try on that day in a manner that diverges from the description by Defendant and the lower court. She testified in her deposition that she browsed the women's and junior's section and may have looked at shoes as well. She testified that she was looking for particular items: professional clothing to wear to nursing school and shorts because it was getting warm. She estimated that she looked around for no more than thirty or forty minutes. She selected approximately six items to try on. Plaintiff testified that she did not have a bag or a purse, and that all she had with her as she was leaving the store was her wallet, cell phone, and keys, which she was carrying in her hand. She pointed this out to the store employees while she was detained in the loss prevention room. Georgetown Police Officer Christopher Bayer *Mirandized* her shortly after he arrived at the store. Plaintiff testified that the police officer directed the search after he had been questioning her for a while and Plaintiff "said something along the lines of what now, because we had been sitting there for a while just with no – with nothing happening." (*Id.* at Page ID# 788.) After she was strip searched she returned to the loss prevention room and was kept there for another ten minutes. (*Id.* at Page ID# 789.) While she was there, the Kohl's employee who stopped her came in and said to her, "I'm sorry. I'm going to get fired." (*Id.*) She also testified that the police officer said, perhaps to make light of the situation, "[a]pparently, you just looked guilty." (*Id.* at Page ID# 790.) The police officer testified that he reviewed the surveillance video more fully after Plaintiff was allowed to leave and stated that he did not see anything on the video that would have established probable cause for him to believe Plaintiff had shoplifted anything.

(R. 33-5, Officer Bayer's Dep. Testimony, Page ID# 690.)

DISCUSSION

I. Standard of Review

Whether a district court properly granted summary judgment is a question of law that is reviewed *de novo*. *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006). Judgment may only be affirmed if the moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A genuine factual dispute exists where evidence would allow "a reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, the evidence "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Likewise, "the burden of establishing the nonexistence of a material factual dispute always rests with the movant." *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979).

"[T]he substantive law will identify which facts are material," *Anderson*, 477 U.S. at 248, as well the allocation of the burden to produce evidence, *Celotex v. Catrett*, 477 U.S. 317, 322-25 (1986). Where a defendant seeks summary judgment on an affirmative defense on which it will bear the ultimate burden of proof at trial, summary judgment is proper "'only if the record shows that [the defendant] established the defense so clearly that no rational jury could have found to the contrary.'" *Beck-Wilson*, 441 F.3d at 365 (quoting *Buntin v. Breathitt Cnty. Bd. of Educ.*, 134 F.3d 796, 800 (6th Cir. 1998)).

A court impermissibly invades the province of the jury it if it attempts to "resolve[] issues of credibility and other conflicting evidence." *Regal Cinemas, Inc. v. W&M Props.*, 234 F.3d 1269, at *3 (6th Cir. 2000) (table disposition). *See also Anderson*, 377 U.S. at 249 ("at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

Additionally, in reviewing summary judgment decisions this Court has observed that certain substantive elements, like reasonableness or probable cause, are so fact bound that they should normally be reserved for the jury "unless there is only one reasonable determination possible" based on the evidence produced by the parties. *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (the existence of probable cause typically presents a question for the jury); *accord McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984) ("in a § 1983 action the factual matters

underlying the judgment of reasonableness generally mean that probable cause is a question for the jury"). *See also Hatch v. Durocher Dock & Dredge, Inc.*, 33 F.3d 545, 547 (6th Cir. 1994) ("the question of seaman status is a mixed question of fact and law and, as such, '[i]f reasonable persons, applying the proper legal standard, could differ as to whether the employee was . . . [a seaman], it is a question for the jury.'") (editing in original) (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991)); *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294 (6th Cir. 2008) (the reasonableness of efforts to maintain secrecy of a trade secret "ordinarily represents a question for the jury" and "only in an extreme case can what is a 'reasonable' precaution be determined as a matter of law").

II. Analysis

In light of the conflicting testimony about factual matters material to whether Defendant had reason to suspect Plaintiff of shoplifting and whether Plaintiff's detention was reasonable in time and manner, we conclude that the decision to grant summary judgment to Defendant on the false imprisonment claim was improper. However, because Plaintiff failed to establish that she suffered "severe" emotional distress, we affirm dismissal of the claim for intentional infliction of emotional distress.

1. The District Court Erred in Granting Summary Judgment on Plaintiff's Claim for False Imprisonment

Kentucky law protects a retailer and its employees from liability for false imprisonment based on the detention of a suspected shoplifter if three requirements are met: (1) the employee has "probable cause" to believe the individual is shoplifting; (2) the person is detained "in a reasonable manner for a reasonable length of time"; and (3) the detention is effected for one of five legitimate purposes, such as making reasonable inquiry into whether the person has unpurchased merchandise, recovering those goods, or informing law enforcement of the detention of the person. Ky. Rev. Stat. Ann. § 433.236(1) (West 2014).

In order to affirm the district court's grant of summary judgment to Defendant based on this privilege, this Court must find that Defendant has put forward evidence establishing each of these three elements "so clearly that no rational jury could have found to the contrary." *Beck-Wilson*, 441 F.3d at 365. Although the first requirement of probable cause and the second requirement that the detention be reasonable in both time and manner are normally questions for the jury, the Defendant may succeed in establishing those elements if the evidence before the court allows "only one reasonable determination." *Gardenhire*, 205 F.3d at 315. Defendant did not meet that burden.

The district court failed to comply with summary judgment standards in granting judgment to Defendant on the basis of the "shopkeeper's privilege" affirmative defense.

a. The District Court Failed to View the Evidence in the Light Most Favorable to the Plaintiff

The district court adopted Defendant's version of the facts in determining that there was probable cause. It accepted Defendant's characterization that Plaintiff was "moving rapidly and picking up items without regard to size or price, " (R. 51, Mem. Op. and Order, Page ID# 951), and ignored Plaintiff's testimony that she was browsing at Kohl's for about thirty or forty minutes, picking out clothes for particular purposes. The district court credited testimony that Pittman heard popping noises consistent with the tags being removed from clothing while Plaintiff was in the dressing room, when Plaintiff testified that she did not know that any of the tags were removed. Additionally, Plaintiff's testimony that Pittman expressed concern about being fired permits the inference that Pittman may have had a motive to subsequently pop the tags himself and then lie about doing so. A jury would not have been required to believe Pittman's testimony about the popping noises, and it was error for the district court to rely on that testimony to buttress its probable cause finding. The district court also failed to mention other evidence favorable to Plaintiff, as discussed further below.

b. The District Court Improperly Shifted the Burden to Plaintiff to Refute the Affirmative Defense

The district court misapprehended the application of summary judgment law to an affirmative defense. It did not require Defendant to establish each element of the shopkeeper's privilege "so clearly that no rational jury could have found to the contrary." *Beck-Wilson*, 441 F.3d at 365. Instead, it placed the burden on Defendant only to establish probable cause, writing that the dispute over the prima facie case would "not be dispositive" if Defendant established that it "had probable cause to believe that Snyder had taken merchandise from the Georgetown store." (R. 51, Mem. Op. and Order, Page ID# 950-51.) In fact, Defendant must also have established—so clearly that no rational fact finder could disagree—that its detention of Plaintiff was reasonable in both time and manner, and that the detention was effected for one of the statutory purposes.

The district court pointed to no evidence that would establish the reasonableness of Defendant's detention of Plaintiff, concluding without explanation that "the alleged detention was reasonable (both in length and in the manner in which it was conducted)." (*See id.* at Page ID# 952.) Instead, it briefly rejected Plaintiff's allegations of unreasonableness based on an acceptance of Defendant's

version of the facts, including Defendant's contention that Plaintiff "offered to remove items of clothing in an effort to convince Kohl's employees that she had not stolen merchandise." (*See id.*) In fact, Plaintiff testified that she only sought to remove her sweatshirt because she was hot and that she never suggested a strip search. The district court further characterized her participation in the strip search as "voluntary conduct," even though Plaintiff testified that she had only allowed herself to be strip searched in compliance with the direction of the police officer who *Mirandized* her. (*See id.* at Page ID# 952-53.) Nonetheless, the district court wrote that "Kohl's agreement and participation in this voluntary conduct by Snyder does not render its actions unreasonable." (*Id.*) In requiring Plaintiff to show the *unreasonableness* of Defendant's conduct, the court impermissibly shifted the burden to her to refute the affirmative defense. In doing so, it violated both summary judgment procedure requiring the moving party to establish the absence of dispute as to a genuine issue of material fact, and the underlying substantive law that places the burden of proving an affirmative defense on the defendant. *See* Fed. R. Civ. P. 56; *Beck-Wilson*, 441 F.3d at 365. There is no evidence that the district court considered the sufficiency of Defendant's affirmative showing with regard to reasonableness.

Finally, there is no evidence that the district court considered whether Plaintiff's detention was effected for one of the statutory purposes. Even if the detention fell within one of those categories, however, the disputes of fact as to probable cause and reasonableness preclude summary judgment.

c. Summary Judgment was Improper on the Record in this Case

When summary judgment standards are correctly applied to the evidence before the district court in this case, it is clear that the Defendant is not entitled to judgment as a matter of law.

Defendant has failed to establish the existence of probable cause "so clearly that no rational jury could have found to the contrary." *Beck-Wilson*, 441 F.3d at 365. In its single decision interpreting Ky. Rev. Stat. Ann. § 433.236 (West 2014), the Kentucky Supreme Court did not articulate a standard for probable cause, though it held that the evidence permitted a finding of probable cause in that case. *See Consol. Sales Co. v. Malone*, 530 S.W.2d 680, 682 (Ky. 1975) (jury could have found probable cause where the store employee observed the plaintiff repeatedly carry items from the baby department to where another plaintiff was shopping in the shoe department, and emerge without the items, and the items were not found in the shoe department). Under the federal Constitution, probable cause is found where, considering the totality of the circumstances, the facts available to the person detaining an individual "would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 133 S.Ct. 1050, 1056 (2013); *see also Maryland v. Pringle*, 540 U.S. 366, 370 ("the substance of all the definitions of probable cause is a reasonable ground for belief of guilt"). Due to the fact-intensive nature of the probable cause inquiry, the issue typically "presents a jury question, unless there is only one reasonable determination." *Gardenhire*, 205 F.3d at 315.

Viewed in the light most favorable to Plaintiff, the evidence relevant to probable cause that would have been available to Defendant's employees when they stopped her includes that she was shopping in Kohl's for thirty or forty minutes; that she selected about six items to try on, including a blazer and jean shorts; and that when she left the fitting room the only items she was carrying were her phone, wallet and keys. It is undisputed that she was wearing a sweatshirt, but it is nonetheless difficult to imagine how Kohl's employees, if they were persons of reasonable caution, could have believed that she was carrying out of the store all six items (since Pittman claims *none* were in her fitting room) under her sweatshirt. Additionally, even if Defendant's (and the district court's) version of the facts *were* undisputed, their description does not rise to the level of indisputable probable cause that has previously supported judgment as a matter of law under Ky. Rev. Stat. Ann. § 433.236 (West 2014). *Compare Messer v. Robinson*, 250 S.W.3d 344, 346-47 (Ky. Ct. App. 2008) ("objective probable cause to stop Robinson" existed when "the security alarm sounded as she passed through the security device") (ordering directed verdict for defendants); *Taylor Drugstores, Inc. v. Story*, 760 S.W.2d 102, 103 (Ky. Ct. App. 1988) (plaintiff was observed placing two items in her purse) (ordering entry of judgment in favor of defendant); *Pennington v. Dollar Tree Stores, Inc.*, 28 F.App'x 482 (6th Cir. 2002) (where Plaintiff had stipulated that employees had probable cause in related criminal plea deal, that stipulation was conclusive as to probable cause in the civil case) (affirming summary judgment).

Defendant's case faces additional trouble on the reasonableness prong. Viewed in the light most favorable to Plaintiff, the evidence establishes that upon being taken to the back room she informed the store employees that the only items she had were her phone, wallet, and keys; that during her detention no employee returned to the fitting room to verify whether there had been a mistake; that a Kohl's employee participated in a strip search of Plaintiff; and that she was detained for thirty or forty minutes. In *Birdsong v. Wal-Mart Stores, Inc.*, 74 S.W.3d 754 (Ky. Ct. App. 2001), the Kentucky Court of Appeals overturned a grant of summary judgment on the shopkeeper's privilege as inappropriate where the plaintiff "claim[ed] she was detained by store employees for approximately 45 minutes"

and "that she was subjected to humiliation" by being made to sit on a bench near the front of the store with a shopping cart pushed in front of her to block her from leaving. *Id.* at 758. In the case at bar, the amount of time Plaintiff was detained is only somewhat less than the forty-five minutes at issue in *Birdsong*, but the strip search she was subjected to could reasonably be found more humiliating than Birdsong's experience of being made to wait at the front of the store. *See id.*

2. Summary Judgment on Plaintiff's Claim for Intentional Infliction of Emotional Distress was Properly Granted

Summary judgment on Snyder's intentional infliction of emotional distress claim was properly granted. Under Kentucky law, "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress[.]" *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984) (*quoting and adopting* Restatement (Second) of Torts § 46 (1965)). To sustain this claim Plaintiff must establish, as one of the necessary elements, that she suffered "severe" emotional distress. In contrast to the elements of probable cause or reasonableness in regard to the false imprisonment claim above, the essentially factual question of whether the Plaintiff suffered "severe" emotional distress is subject to gatekeeping by the court, which must determine "whether on the evidence severe emotional distress can be found" before the jury may determine "whether, on the evidence, it has in fact existed." Restatement (Second) of Torts § 46, cmt. j (1965). Snyder claimed that she is embarrassed because of her detention and that she no longer feels comfortable shopping. Snyder's embarrassment and discomfort do not rise to the level of severe emotional distress required to submit her claim to the jury. *See Wells v. Huish Detergents, Inc.*, 19 F.App'x 168, 179 (6th Cir. 2001); *Benningfield v. Pettit Envtl., Inc.*, 183 S.W.3d 567, 572 (Ky. Ct. App. 2005).

CONCLUSION

For the foregoing reasons, we REVERSE the entry of judgment for Defendant on the false imprisonment claim and REMAND the case for further proceedings consistent with this opinion. We AFFIRM the grant of summary judgment to Defendant on Plaintiff's claim for intentional infliction of emotional distress.

---------

Notes:

[*] After this appeal was submitted on the briefs, Judge Helene N. White recused herself because of a potential conflict of interest.

[&dagger;] Plaintiff originally filed suit in state court. All Defendants removed to the United States District Court for the Eastern District of Kentucky, invoking federal question removal jurisdiction under 28 U.S.C. §§ 1331 and 1441(b) (2012) based on the § 1983 claim Plaintiff brought against the government defendants.

---------